[Cite as *In re Estate of Straub*, 2026-Ohio-3006.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN RE: | : | CASE NO. CA2025-09-107 |
| ESTATE OF JOHN C. STRAUB, JR., DECEASED | : | OPINION AND JUDGMENT ENTRY |
| | : | 8/4/2026 |
| | : | |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
PROBATE DIVISON
Case No. PE23-06-0683

Gunsher Attorneys, Ltd., and Joshua Gunsher and Michael P. Richardson, for appellees.

Bolin & Troy L.L.C., and Charles D. Maddox and Cathryn N. Loucas, for appellants.

## O P I N I O N

**BYRNE, P.J.**

{¶ 1} Savannah Ellen Lewis appeals the decision of the Butler County Court of Common Pleas, Probate Division, denying her application to admit to probate the purported will of her grandfather, John C. Straub, Jr. ("Grandfather"). For the reasons

discussed below, we affirm.[1]

## I. Factual and Procedural Background

{¶ 2}   Grandfather died in 2023.  In 2025, his granddaughter, Lewis, sought to admit Grandfather's durable power of attorney ("POA") to the probate court as his last will and testament. Shortly thereafter, the probate court entered an interlocutory order denying Lewis's application. In so doing, the probate court found that the instrument Lewis offered for probate was "not a will" because it did not "purport to dispose of the decedent's estate." (Underlined text in original.)

{¶ 3}   Following the court's interlocutory order, Lewis requested that the probate court hold a hearing on the matter. Lewis made her request pursuant to R.C. 2107.181, which provides that if the probate court denies an application to admit a will to probate, the court must "continue the matter for further hearing," during which "witnesses may be called, subpoenaed, examined, and cross-examined." Upon the conclusion of the hearing, the court shall then either "revoke its interlocutory order . . . and admit it to probate, or enter a final order refusing to probate it."

{¶ 4}   The probate court held the requested hearing. At the hearing, Lewis's counsel presented two witnesses: Jonathan Gleisinger and Scott Stoll. Gleisinger testified that he had known Grandfather for 25 years and that he was a witness to the purported will. Stoll testified to the same and indicated that he was a brother-in-law and "really good friend" of Grandfather. He also stated that he was a "witness to a notary for the will/POA" or "whatever it was called" and that he "kn[e]w exactly what [Grandfather] wanted." Stoll further testified that Grandfather "wanted absolutely everything to go to his three grandchildren" and that Grandfather made that "very clear" to him.

---

1. Pursuant to Loc.R. 6(A), we have sua sponte removed this appeal from the accelerated calendar. *See 902 Carp Loveland L.L.C. v. Potts,* 2026-Ohio-1313, ¶ 1, fn. 1 (12th Dist.).

- 2 -

{¶ 5} Following the hearing, Lewis filed a motion to reopen or to continue the oral hearing for the "limited purpose" of further examining Gleisinger. The magistrate denied the motion, finding that "there [was] no benefit in affording [Lewis] an opportunity to elicit additional testimony from [Gleisinger]" because "[f]urther testimony would have no bearing on the Court's ultimate decision that the purported Will is a [POA] which terminated upon the decedent's death." The magistrate further stated that the POA could not be "extended or transformed into another instrument thereafter no matter what [Lewis] otherwise wishe[d]."

{¶ 6} Later that same day, the magistrate entered an order denying Lewis's application to admit the purported will to probate. In the magistrate's order, the magistrate recognized that the purported will was titled "Durable Power of Attorney" and that a provision in the instrument "instructed the decedent's appointed Attorney-in-Fact ("Agent") to 'divide all my worldly possessions among my 3 grandchildren who have lived with me their entire life . . . Savannah, Tiffany and Corey will divide everything among them.'"

{¶ 7} In so doing, the magistrate found that "the dispositive provision" in the purported will was the final sentence, which stated that the "Durable Power of Attorney shall remain in effect until my demise or until it is revoked by me through written notification to my Agent." From this provision, the magistrate found that "[i]t [was] clear . . . that all powers and authority conferred on the decedent's Agent by this instrument were to end upon the decedent's death" and that reliance on the POA to "serve as a Will after the decedent's death for the purpose of allocating and dividing the decedent's worldly possessions [was] misplaced."

{¶ 8} Lewis objected to the magistrate's decision. In her objections, Lewis argued that the magistrate erred in denying her application because the "denial was based on

her substantive interpretation of the language contained in the will rather than the formal requirements of the execution of a will as contained in Ohio Revised Code 2107.03." A few weeks later, Lewis filed a supplement to her objections, stating that the "document must be admitted to probate" because it "satisfie[d] all of the essential items . . . in ORC 2107.03."

{¶ 9} On August 11, 2025, the probate court overruled Lewis's objections and affirmed and adopted the magistrate's decision. Lewis subsequently appealed, raising two assignments of error for review. We will address each of Lewis's two assignments of error in turn.

## II. Law and Analysis

{¶ 10} Lewis's first assignment of error states:

> THE TRIAL COURT ERRED IN DENYING THE APPLICATION TO ADMIT THE DECEDENT'S WILL TO PROBATE PURSUANT TO R.C. 2107.18 WHERE THE WILL FACIALLY COMPLIED WITH ALL EXECUTION FORMALITIES PRESCRIBED BY R.C. 2107.03.

{¶ 11} In support of her first assignment of error, Lewis argues that the probate court erred in denying her application to admit a purported will to probate pursuant to R.C. 2107.18 because R.C. 2107.18 "strictly limits the court's review to confirming the will's facial compliance with execution formalities under R.C. 2107.03" and "preclud[es] a substantive interpretation of the document's contents."

{¶ 12} We disagree with Lewis's argument as it is inconsistent with the plain reading of R.C. 2107.18 and Ohio caselaw.

### A. Can a Probate Court Examine the Contents of a Purported Will?

{¶ 13} To begin our analysis, we must start with the text of R.C. 2107.18. The first paragraph of that statute, which is titled "Admission to Probate," provides, in pertinent part, the following:

- 4 -

> The probate court shall admit a *will* to probate if it appears from the face of the will, or if the probate court requires, in its discretion, the testimony of the witnesses to a will and it appears from that testimony, that the execution of the will complies with the law in force at the time of the execution of the will in the jurisdiction in which the testator was physically present when it was executed, with the law in force in this state at the time of the death of the testator, or with the law in force in the jurisdiction in which the testator was domiciled at the time of the testator's death.

(Emphasis added.) R.C. 2107.18.

{¶ 14} In reviewing a trial court's interpretation of statutory text, our review is de novo. *State v. Gwynne*, 2023-Ohio-3851, ¶ 8. To that end, our "duty in construing a statute is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted." *Pelletier v. Campbell*, 2018-Ohio-2121, ¶ 14, citing *Griffith v. Aultman Hosp.*, 2016-Ohio-1138, ¶ 18. Rather than reading the tea leaves of legislative history to divine legislative intent, the legislature's intent is to be determined from the words actually used in the statute. *See Caldwell v. Whirlpool Corp.*, 2024-Ohio-1625, ¶ 13. "Therefore, '[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact.'" *Id.*, quoting *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. "In other words, in construing the words of a statute we are to determine the original public meaning of the actual words the General Assembly enacted and apply that meaning." *State ex rel. Moore v. Fornshell*, 2025-Ohio-65, ¶ 14 (12th Dist.), citing *Pelletier* at ¶ 14.

{¶ 15} "'If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary.'" *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81 (1997), quoting *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 1996-Ohio-291, ¶ 7. Unambiguous statutes are to be applied according to the plain meaning of the words used and courts are not free to delete

- 5 -

or insert words. *Burrows* at 81. In reviewing statutory text, we also first read words and phrases in context and construe them according to rules of grammar and common usage. *Moore* at ¶ 16, citing *State ex rel. Steele v. Morrissey*, 2004-Ohio-4960, ¶ 21.

{¶ 16} With respect to its first paragraph, R.C. 2107.18 unambiguously provides that it is the duty of the probate court to admit a "will" to probate if it appears on the face of the will that "the execution of the will complies with the law in force . . ." Because R.C. 2107.18 requires the probate court to admit a "will" to probate, it is reasonable to infer that the probate court may examine the contents of the purported will to determine whether it is, in fact, a "will" before admitting or denying the purported will to probate. This is evident from the plain language of R.C. 2107.18, which does not state that the probate court must admit any "document" or "purported will" to probate if it complies with R.C. 2107.03; the statute plainly states that the probate court "shall admit a *will*." (Emphasis added.) R.C. 2107.18.

{¶ 17} Other Ohio appellate courts have upheld the same principle—that a probate court must examine whether a purported will is a will—before admitting or denying a purported will to probate pursuant to R.C. 2107.18.

{¶ 18} For example, the Third District Court of Appeals demonstrated this principle in *In re Will of Miekle*, 1977 WL 199309, *3 (3d Dist. June 30, 1977), when it examined the plain language of R.C. 2107.18 and held that "[i]t was apparent from [R.C. 2107.18] that before an instrument may be admitted to probate it must be a will and it can only be a will if it disposes of property by performance after death." The Third District reasoned that "[i]f the General Assembly intended otherwise it could readily have used the terms instrument, writing or document, instead of the term will" in the plain language of the statute. *Id.*

{¶ 19} We agree with the Third District's analysis of R.C. 2107.18 and find it

consistent with our interpretation that a probate court *must* determine whether the purported will is a will before it denies or admits it to probate. That is, the probate court did not err in examining the contents of the purported will before denying it admission to probate, even if the purported will complied with the formal will requirements of R.C. 2107.03. Therefore, finding no merit to Lewis's argument, Lewis's first assignment of error is overruled.

**B. Is the Purported Will a Will?**

{¶ 20} Lewis's second assignment of error states:

> THE TRIAL COURT ERRED IN FINDING THAT THE PURPORTED WILL WAS NOT A WILL.

{¶ 21} In support of her second assignment of error, Lewis argues that the probate court erred in finding that the POA was not a will because the "Will/POA expresses testamentary intent to distribute property upon death." Specifically, Lewis contends that the provision in the POA's "Special Instructions" section expressed testamentary intent. That provision states: "My sister is POA and she has been instructed to divide all my worldly possession among my 3 grandchildren who have lived with me their entire life. Savannah, Tiffany, and Corey will divide everything among them."[2] We find no merit to Lewis's argument.

{¶ 22} As stated previously, R.C. 2107.18 requires that the purported will be an actual "will" to be admitted to probate. In statutory construction, we give words their plain, ordinary meaning—unless the legislature has clearly expressed a contrary intention. *In re Application of 6011 Greenwich Windpark*, *L.L.C.*, 2019-Ohio-2406, ¶ 19. Here, we must

---

2. We note that, as phrased, the text of the POA is ambiguous as to whether Grandfather's sister was to divide his "worldly possessions" between his "3 grandchildren" or whether "Savannah, Tiffany, and Corey" were to divide his possessions. In fact, the POA does not specifically identify "Savannah, Tiffany, and Corey" as Grandfather's "3 grandchildren," though we understand this to be the case. We need not address the POA's ambiguous phrasing because our resolution of both assignments of error renders such analysis unnecessary.

examine the word "will" according to its plain, ordinary meaning, as the legislature did not express a contrary intention in R.C. 2107.18.

{¶ 23} Notably, R.C. 2107.18 does not define the term "will." Although "will" is not statutorily defined, its definition has remained consistent. From one of its earliest definitions, a will was described as a "'legal declaration of a man's intentions which he wills to be performed after his death.'" *See Colton v. Colton*, 127 U.S. 300, 309 (1888), quoting 2 *Bl. Comm.* 499. *The Law of Wills* similarly defined a "will" as "an instrument by which a person makes a disposition of his property to take effect after his decease, and which is in its nature ambulatory and revocable during his life." Thomas E. Atkinson, *Law of Wills*, 2 (2d Ed. 1953). *Black's Law Dictionary* also defines a "will" as a "document by which a person directs his or her estate to be distributed upon death." *Black's Law Dictionary* (8th Ed. 2004).

{¶ 24} Ohio caselaw follows suit in defining the term "will." For example, a century-old Ohio Supreme Court opinion recognized that a "will is an instrument by which a person makes a disposition of property to take effect after death." *Moon v. Stewart*, 87 Ohio St. 349, 352 (1913), citing 1 *Jarman on Wills* (6th Ed.) *18. In the same opinion, the Ohio Supreme Court acknowledged that the "Supreme Court of the United States adopted Blackstone's definition, which declares a will to be 'the legal declaration of a man's intention which he wills to be performed after his death.'" *Moon* at 358, quoting *Colton* at 309.

{¶ 25} More recently, this court along with other districts have similarly defined a will. In *In re Estate of Hand*, 2016-Ohio-7437, ¶ 27 (12th Dist.), citing *In re Rosenbaum Trust*, 2023-Ohio-1830, ¶ 11 (8th Dist.), this court defined a will as having "testamentary intent" which is the "disposition of property to take effect only at death."

{¶ 26} The Third District, in *In re Estate of Ike*, 7 Ohio App.3d 87, 88 (3d Dist.),

held that "at the minimum" a will must have "testamentary intent, *i.e.*, a disposition of property to take effect only at death." (Emphasis in original.) The court recognized that the First District had previously found that "'the essential element of a will'" is that it "'pass[es] title upon the death of the owner.'" *Ike* at 88, quoting *Central Trust Co. v. McCarthy*, 57 N.E.2d 126, 130 (1943).

{¶ 27} Here, the purported will lacks testamentary intent as the document only contemplates events to take place during the life of Grandfather and expires upon his death. The document makes no reference to any future interest or to a limitation of conveyance until the occurrence of Grandfather's death. In fact, the POA specifically states that "[t]his Durable Power of Attorney shall remain in effect until my demise or until it is revoked by me through written notification to my Agent."

{¶ 28} Lewis, however, argues that this court should ignore the termination provision because the termination language governing the POA "does not invalidate the distinct testamentary provisions." But Lewis fails to cite any legal authority that would support her argument. We reiterate that it is not the duty of an appellate court to make arguments for a party, and we refrain to do so here. *See Mallikarjunaiah v. Shankar*, 2020-Ohio-4508*,* ¶ 25 (12th Dist.), quoting *Dudley v. Dudley*, 2019-Ohio-4309, ¶ 10 (12th Dist.) ("'An appellate court will neither construct assignments of error nor create arguments on behalf of an appellant because it is not the duty of an Ohio appellate court to raise arguments for the parties.'").

{¶ 29} Even so, the POA is titled "Durable Power of Attorney" and primarily describes the Agent's duties as a power of attorney. The POA also repeatedly refers to itself as a POA and even contemplates a separate document as a "Last Will and Testament." Therefore, Lewis' argument that the POA was Grandfather's "legal declaration" which he willed "to be performed after his death" is without merit. *Colton* at

309. Thus, finding no merit to Lewis's arguments, Lewis's second assignment of error is also overruled.

### III. Conclusion

{¶ 30} For the reasons outlined above, we overrule Lewis's first assignment of error because the plain language of R.C. 2107.18 requires the probate court to determine whether a purported will is, in fact, a will. We also overrule Lewis's second assignment of error because the purported will lacked the requisite testamentary intent.

{¶ 31} Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.

---

# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas, Probate Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Robert A. Hendrickson, Judge*

*/s/ Mike Powell, Judge*